Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 1615 | DATE | 5/10/2000 |
| CASE TITLE | CHICAGO STEEL & CRANE, INC. vs. STRUCTURAL IRONWORKERS LOCAL NO. 1, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Motion to Dismiss

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] The motion to dismiss [8-1] is denied. The defendants are directed to answer the amended complaint by May 23, 2000. ENTER MEMORANDUM OPINION AND ORDER.

*[signature: Suzanne B. Conlon]*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | MAY 1 1 2000 | 14 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 00 MAY 10 PM 3:41 | 5/10/2000 date mailed notice | |
| jad | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

CHICAGO STEEL & CRANE, INC. )
)
    Plaintiff, ) No. 00 C 1615
)
v. ) Suzanne B. Conlon, Judge
)
STRUCTURAL IRONWORKERS LOCAL NO. )
1, et al. )
    Defendants. )

## MEMORANDUM OPINION AND ORDER

Chicago Steel & Crane, Inc. ("Chicago Steel") seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 against the welfare, pension, and annuity funds of the Structural Ironworkers Local No. 1, the Ironworkers Apprentice Training & Journeymen Retraining Fund, and Steve Bukovac, manager of the funds (collectively "the Funds"). At issue is the parties' rights and obligations under a collective bargaining agreement governed by the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. ("ERISA"). The Funds move to dismiss the complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

## BACKGROUND

On a motion to dismiss for lack of subject matter jurisdiction, the court draws all inferences and resolves all ambiguities in the plaintiff's favor and assumes that all well-pleaded facts are true. United Transp. Union v. Gateway Western Ry. Co., 78 F.3d 1208, 1210 (7th Cir. 1996). However, at the dismissal stage, the court may

properly consider evidence outside the jurisdictional allegations in the complaint bearing on the court's jurisdiction. Capitol Leasing Co. v. F.D.I.C., 999 F.2d 188, 191 (7th Cir. 1993); Bowyer v. United States Dep't of Air Force, 875 F.2d 632, 635 (7th Cir. 1989).

Chicago Steel is an employer and is obligated by a collective bargaining agreement to pay fringe benefit contributions to the Funds for bargaining unit work by its employees. The Funds audited Chicago Steel for the period of September 1, 1996 through March 31, 1999. According to the audit, Chicago Steel has failed to pay $259,014.51 in contributions between September 1, 1996 and March 31, 1999. Chicago Steel contends the Funds have sought payment of the disputed amount from Chicago Steel, plus an additional $103,793 in audit fees, liquidated damages, and interest. Chicago Steel claims it has not breached any obligation to the Funds and does not owe the disputed contributions; rather Chicago Steel contends the Funds erroneously seek contributions for employees who did not perform bargaining unit work. Chicago Steel further asserts it sent a check for $22,497.59 to the Funds to be applied to Chicago Steel's payments, but that the Funds refused to apply the money in accordance with Chicago Steel's directions. The Funds respond that certain disputed amounts were removed from the audit in response to Chicago Steel's submission of certain information, but that Chicago

Steel filed this suit before they were notified of the adjustments.

## DISCUSSION

The Funds contend this court lacks subject matter jurisdiction over Chicago Steel's claim because ERISA does not confer jurisdiction over suits brought by employers. The Funds argue that ERISA authorizes only four classes of plaintiffs to bring civil actions in federal court: plan participants, beneficiaries, fiduciaries, and the Secretary of Labor. In support, the Funds point first to § 1132(a) of ERISA. Section 1132(a) enumerates various causes of action and lists only participants, beneficiaries, fiduciaries, and the Secretary of Labor as parties who can bring these actions. Section 1132(a) does not mention employers. Second, the Funds argue that § 1132(e)(1), entitled "Jurisdiction," expressly limits federal court jurisdiction to actions brought by the parties listed in § 1132(a). Section 1132(e)(1) states, in relevant part,

> Except for actions [brought by a participant or beneficiary to recover benefits due under a plan, or enforce or clarify his rights under a plan], the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, [or] fiduciary . . .

Like § 1132(a), § 1132(e)(1) also makes no reference to employers. From both of these provisions, the Funds conclude that subject matter jurisdiction over ERISA actions is limited to cases brought

3

by plan participants, beneficiaries, fiduciaries, or the Secretary of Labor. Because Chicago Steel is none of these, the Funds conclude this court lacks jurisdiction over Chicago Steel's suit.

It is true that § 1132 does not vest federal courts with jurisdiction over suits brought under ERISA by employers. In Giardono v. Jones, 867 F.2d 409 (7th Cir. 1989), the Seventh Circuit held that federal courts have no jurisdiction under § 1132 over an employer's claim that fund trustees violated their fiduciary duties under ERISA. The court concluded the "grant of subject matter jurisdiction in § 1132(e)(1) is exclusive" and that "[t]he courts are without the power to expand their jurisdiction under ERISA in order to imply a cause of action for non-enumerated parties." Id. at 413; see also Franchise Tax Board v. Construction Laborers Vacation Trust, 463 U.S. 1, 21 (1983) ("The express grant of federal jurisdiction in ERISA is limited to suits brought by certain parties").

However, § 1132 is not the only ground upon which Chicago Steel attempts to base federal court jurisdiction. The amended complaint also asserts jurisdiction under 28 U.S.C. § 1331 - the federal question jurisdiction statute. Under § 1331, federal jurisdiction exists for claims "arising under" the Constitution, laws, or treaties of the United States. While Giardono found that ERISA itself does not confer subject matter jurisdiction over employer suits, it did not consider whether federal question jurisdiction under 28 U.S.C. § 1331 exists over such suits. See

4

Central States, Southeast and Southwest Areas Pension Fund v. Howard Baer, Inc., 753 F. Supp. 241, 244 (N.D. Ill. 1991).

The court concludes federal jurisdiction under § 1331 exists over Chicago Steel's claim because the claim arises under the laws of the United States -- specifically, the federal common law of ERISA. The Supreme Court has acknowledged Congress' intent that in the context of ERISA, "a body of Federal substantive law will be developed by the courts to deal with issues involving rights and obligations under private welfare and pension plans." Franchise Tax Board, 463 U.S. at 24 n. 26. This receptiveness to federal common law results from ERISA's broad preemption provision. UIU Severance Pay Trust Fund v. Local Union No. 18-U, 998 F.2d 509, 512 (7th Cir. 1993). ERISA supersedes "any and all State laws insofar as they may . . . relate to any employee benefit plan . . . ," 29 U.S.C. § 1144, and ERISA preemption extends to any cause of action that has a "connection or reference to an ERISA plan." Central States, Southeast and Southwest Areas Health & Welf. Fund v. Neurobehavioral Assocs., 53 F.3d 172, 174 (7th Cir. 1995) (quoting Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 47 (1987)). Because "Congress has blotted out (almost) all state law on the subject of pensions, . . . a complaint about pensions rests on federal law no matter what label its author attaches." Bartholet v. Reishauer A.G. (Zurich), 953 F.2d 1073, 1075 (7th Cir. 1992). Consequently, "even if a cause of action does not stem directly from a provision in ERISA, a plaintiff may still establish federal jurisdiction under the general

5

federal question statute if the court decides that the claim is related to the policies and concerns underlying ERISA." Central States, 53 F.3d at 174.

Federal question jurisdiction exists because Chicago Steel's claim is premised on the obligations created by an ERISA plan. The nature of ERISA's preemption and the federal common law of ERISA "require application of federal law to actions premised on the contractual obligations created by ERISA plans." Whitworth Bros. Storage Co. v. Central States, Southeast & Southwest Areas Pension Fund, 794 F.2d 221, 235 (6th Cir. 1986). The amended complaint alleges the Funds are part of an ERISA benefit plan. Amended Compl. ¶ 3. Chicago Steel's claim concerns its payment obligations to the Funds under the collective bargaining agreement establishing the Funds. Therefore, the federal common law of ERISA must be applied to the case. See Dugan v. Nickla, 763 F. Supp. 981, 983 (N.D. Ill. 1991) ("Since this dispute involves interpretation of a provision of an ERISA benefit plan . . . [f]ederal common law must be applied . . .").

The Seventh Circuit's decision in UIU Severance Pay also supports application of the federal common law of ERISA to Chicago Steel's claim. UIU Severance Pay held an employer has a cause of action under the federal common law of ERISA for restitution of funds wrongly contributed to an ERISA fund. The court explained that because ERISA does not grant a cause of action to employers to recover mistaken payments and because plan trustees "have no

6

financial incentive to return mistaken payments," it is necessary to permit employers to assert a judicially-crafted federal common law cause of action. Without this federal common law cause of action, "employers are left to the mercy of plan trustees." UIU Severance Pay, 998 F.2d at 513. The court further reasoned that if employers were not permitted to seek recovery of mistaken contributions, they may be less inclined to sponsor ERISA plans. This outcome would undermine ERISA's goal of expanding pension and welfare benefit plan coverage. Id. These concerns are also present in this case. It is true Chicago Steel does not seek restitution for payments already made, as it has yet to pay the contested amount. However, when an ERISA fund accuses an employer of delinquency in its fund contributions, the employer's interest in a proper determination of its payment obligations is just as strong as in the case where the employer has already paid the contested amounts and seeks to recover them.

The only difference between Chicago Steel's claim and the claim in UIU Severance Pay is one of timing - whether the employer sues before it has paid the contested amounts, or whether it sues to recover amounts already paid. This timing issue is relevant not to whether Chicago Steel's claim arises under the federal common law of ERISA, but rather to whether there is a case or controversy, and consequently, whether the claim is properly cognizable under Article III. A controversy is certainly present when an employer seeks recovery of funds rightfully belonging to the employer but already

7

contributed to a fund and controlled by the fund. Chicago Steel's case is different, as no payment has yet been made. However, Chicago Steel seeks a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 ("the DJA"). The DJA provides that a district court may declare the rights and legal obligations of an interested party "[i]n a case of actual controversy." Because this language "tracks the 'cases' or 'controversies' requirement of Article III," Deveraux v. City of Chicago, 14 F.3d 328, 330 (7th Cir. 1994), applicability of the DJA and Chicago Steel's constitutional standing can be analyzed concurrently.[1]

The DJA enables a person who is reasonably at legal risk because of an unresolved dispute to obtain judicial resolution of the dispute without having to wait for commencement of litigation by the other side. See BP Chemicals Ltd. v. Union Carbide Corp., 4 F.3d 975, 977 (Fed. Cir. 1993). To determine the existence of an actual controversy in the context of a declaratory judgment action, the court examines "whether there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory

---

[1] The Funds argue Chicago Steel improperly attempts to utilize the DJA as a basis for jurisdiction. The Funds contend the DJA is simply a procedural statute that grants a declaratory remedy, and does not act as an independent basis for federal jurisdiction. However, the basis for this court's jurisdiction is Chicago Steel's claim under the federal common law of ERISA. Accordingly, the amended complaint asserts an independent basis for jurisdiction.

8

judgment." GNB Battery Technologies Inc. v. Gould Inc., 65 F.3d 615, 619 (7th Cir. 1995). "It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, and it must be ripe for judicial action in that '[t]he disagreement must not be nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved by deciding them."' Basic v. Fitzroy Eng'g, Ltd., 949 F. Supp. 1333, 1337 (N.D. Ill. 1996) (quoting Public Serv. Comm'n of Utah v. Wycoff, 344 U.S. 237 (1952)).

These standards are met in this case. The parties are adverse, as they dispute the amounts owed by Chicago Steel to the Funds. Moreover, Chicago Steel alleges the Funds threaten to sue it for the contested amount. A declaration from Chicago Steel states the Funds have informed Chicago Steel of their intent to file suit to collect the monies allegedly owed and that the Funds requested Chicago Steel to dismiss this action and assert its claim as a defense in the suit filed by the Funds. Berglund Decl. ¶ 2. Moreover, Chicago Steel alleges it sent a payment to the Funds which the Funds declined to apply correctly to the contested amount. The Funds do not contest these allegations; indeed, they make no arguments concerning the ripeness of the dispute. Given this present state of the dispute, there is little to be gained by requiring Chicago Steel to make the contested payments and then sue to recover them. The legal focus

9

of the suit - Chicago Steel's payment obligations - will not be clarified by this delay. Whether Chicago Steel has paid or not, the court is required in either case to interpret the relevant agreements governing the parties' obligations under the ERISA plan. Accordingly, Chicago Steel's claim presents a controversy ripe for adjudication under the DJA.

## CONCLUSION

The motion to dismiss is denied.

ENTER:

Suzanne B. Conlon
United States District Judge

May 10, 2000