Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1615 | **DATE** | 7/19/2002 |
| **CASE TITLE** | Chicago Steel & Crane, Inc. vs. Structural Ironworkers Local No. 1, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] The Court grants the motion for summary judgment [112-1] on the Funds' claims and dismisses, as moot, Chicago Steel's request for declaratory relief. The Court also denies, as moot, the motions to strike portions of the Funds' statement of additional facts [108-1] and to exclude the Funds' expert. The case is terminated.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 4 | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JUL 22 2002 | |
| | Notified counsel by telephone. | | date docketed | 114 |
| | Docketing to mail notices. | | docketing deputy initials | |
| ✓ | Mail AO 450 form. Mailed by MD. | U.S. DISTRICT COURT | 7/19/2002 | |
| | Copy to judge/magistrate judge. | 02 JUL 19 PM 4:11 | date mailed notice | |
| MD | courtroom deputy's initials | Date/time received in central Clerk's Office | MD mailing deputy initials | |

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**
**JUL 2 2 2002**

| | |
|---|---|
| CHICAGO STEEL & CRANE, INC., a Corporation, <br><br> Plaintiff/Counter-Defendant <br><br> v. <br><br> STRUCTURAL IRONWORKERS LOCAL NO. 1 WELFARE FUND, STRUCTURAL IRONWORKERS LOCAL NO. 1 PENSION FUND, STRUCTURAL IRONWORKERS LOCAL NO. 1 ANNUITY FUND, IRONWORKERS APPRENTICE TRAINING & JOURNEYMAN RETRAINING FUND, and STEVE M. BUKOVAC as Administrative Manager, <br><br> Defendants/Counter-Plaintiffs. <br> ------------------------- <br> GEORGE WEILAND, as Trustee, and STRUCTURAL IRONWORKERS LOCAL NO. 1, et al., <br><br> Third-Party Plaintiffs <br><br> v. <br><br> ALL ERECTION COMPANY, INC., a/k/a ALL ERECTORS, INC. <br><br> Third-Party Defendant. | No. 00 C 1615 |

## MEMORANDUM OPINION AND ORDER

Plaintiff Chicago Steel & Crane, Inc. ("Chicago Steel") filed an amended complaint for declaratory relief under 28 U.S.C. § 2201 against defendants (collectively "the Funds"), seeking a declaration that Chicago Steel does not owe contributions for amounts paid to its owner and

114

corporate officer, Thomas Mooncotch ("Mooncotch") or to "cash" and an order that the Funds apply payment for contributions to named employees as directed by Chicago Steel. The Funds filed a counterclaim against Chicago Steel and a third-party complaint against All Erection Company, Inc., a/k/a All Erectors, Inc. ("All Erectors"), also owned by Mooncotch, for delinquent contributions and fees under Section 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(3), and Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.[1] Before the court are the motions of Chicago Steel and All Erectors for summary judgment or partial summary judgment, to strike portions of the Funds' Local Rule 56.1(b)(3)(B) statement of additional facts and to exclude the Funds' proposed expert. The court addresses the motions as set forth herein.

## BACKGROUND

Chicago Steel is party to a collective bargaining agreement between Associated Steel Erectors of Chicago, Illinois and the International Association of Bridge, Structural and Reinforcing Iron Workers Local Union No. 1 of Chicago, Illinois ("Local No. 1"). The collective bargaining agreement requires Chicago Steel to submit, based on an employee's hourly wage, various fringe benefit contributions and union dues (Work Assessment and Iron Workers' Political Action League ("IPAL") fees) for employees who do the type of work specified in the collective bargaining agreement within the territorial jurisdiction of Local No. 1. (*See* Ex. List of Chicago Steel and All Erectors, Exs. 7, 8.) All Erectors is the operating entity of Chicago Steel.

---

[1] This court has jurisdiction over Chicago Steel's declaratory judgment action pursuant to 28 U.S.C. § 1331, in that the claim arises under the federal common law of ERISA, *see Chicago Steel & Crane, Inc.* v. *Structural Ironworkers Local No. 1*, No. 00 C 1615, 2000 WL 1448660 (N.D. Ill. May 11, 2000) (Conlon, J.), and jurisdiction over the Funds' counterclaim and third-party complaint pursuant to Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1) and Section 301(c) of the LMRA, 29 U.S.C. § 185(c).

2

As the operating entity, All Erectors pays operating bills and releases money to Chicago Steel from which employees are paid. Chicago Steel is the payroll entity and the entity that submits payments to the Funds.

In April or May of 1999, in response to Chicago Steel's request for a minority ironworker for a project at Jenner Elementary School in Chicago, Local No. 1's president, Robert Boskovich ("Boskovich"), visited the site. Although the employees on the project told Boskovich they were employed by Chicago Steel, he learned that a subcontractor, All Estimating, was performing the steel work on the project. This information was passed on to the Funds' administrator, Steve Bukovac ("Bukovac"), who initiated an audit of Chicago Steel for the time period covering September 1, 1996 through March 31, 1999.

In October, 1999, the auditors issued their report, a Report of Independent Certified Public Accountants (the "audit report"), stating therein that the purpose of the report was to assist Bukovac in determining Chicago Steel's compliance with the contribution requirements of the collective bargaining agreement and related trust agreements. The report indicated that there were two categories of possible additional reportable hours for which contributions and dues were owed: (1) 489.25 under-reported hours of 17 named iron workers, based on a review of Chicago Steel's payroll journals; and (2) 12,791.5 unreported hours of unnamed iron workers based on All Erectors' checks written to "cash" and to "Mooncotch,"[2] most of which Mooncotch had claimed on his personal income taxes, but for which there was no back-up documentation and which the auditors were unable to match with deposits in Mooncotch's personal bank

---

[2] To arrive at the number of hours the auditors divided the amount of the check by the hourly wage rate mandated by the collective bargaining agreement.

3

account. The Funds sent Chicago Steel the audit report and claimed contributions as set forth therein (delinquent contributions of $194,741.40, liquidated damages of $29,211.21, interest to October 31, 1999 of $39,281.32, and audit fees of $13,272.50). (*See* Mot. Summ. J., Ex. B.)

In response, on or about February 18, 2000, Chicago Steel sent a check in the amount of $22,497.59, along with a letter directing that for the named employees, $6,866.56 be applied for contributions to various fringe benefit funds, $215.07 to Working Assessments, $14.66 for IPAL dues, $1,064.40 liquidated damages and $13,272.50 audit fees (the remainder of $1,064,40 to any additional contributions due for the named employees or interest). Chicago Steel refused to pay amounts alleged to be due on checks to "cash" or "Mooncotch," claiming these were "payments made to an officer for which income taxes were paid." (*Id.*, Ex. A.) The Funds placed the check in an interest-bearing escrow account.

In March, 2000, Chicago Steel sued the Funds for a declaration that the Funds were seeking contributions for payments to a corporate officer not covered by the collective bargaining agreement and an order directing the Funds to apply the check as set forth in Chicago Steel's February 18 letter. The Funds counterclaimed against Chicago Steel and filed a third-party complaint against All Erectors asserting that Chicago Steel is an alter-ego of and single employer with All Erectors, and seeking fringe benefit contributions and other fees under Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), and Section 301 of the LMRA, 29 U.S.C. § 185. Chicago Steel and All Erectors have moved for summary judgment or partial summary judgment, to strike portions of the Funds' Local Rule 56.1(b)(3)(B) statement of additional facts, and to exclude the Funds' proposed expert.

## SUMMARY JUDGMENT STANDARDS

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed R. Civ. P. 56(c) Advisory Committee's notes. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the non-moving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.*, 477 U.S. at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598-599. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the non-moving party as well as view all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## DISCUSSION

Chicago Steel and All Erectors argue that they are entitled to summary judgment on the issue of whether Chicago Steel is liable under the collective bargaining agreement for alleged contributions and union dues on checks to "cash" and "Mooncotch," which they contend will resolve this case. Alternatively, they move for partial summary judgment on the issue that the Funds must apply Chicago Steel's payment for named employees in the manner directed in its

5

February 18, 2000 letter and/or that Chicago Steel is not required to pay union dues (Working Assessment or IPAL) for checks to "cash" and "Mooncotch" because there were no written authorizations for such deductions on file for unnamed employees. The court concludes that Chicago Steel is entitled to summary judgment on the first issue and, therefore, does not address the other two. Because the court considered all of the Funds' evidence in the motion for summary judgment (and still found summary judgment warranted), it is also not necessary to reach the merits of the motions to strike and to exclude the Funds' expert testimony.

**Whether payments to "Mooncotch" and "cash" can form the basis of the Funds' Claims**

Chicago Steel and All Erectors are obligated to make contributions to the Funds only if they are parties to a binding labor agreement with Local No. 1, *see Illinois Conference of Teamsters and Employers Welfare Fund v. Steve Gilbert Trucking*, 71 F.3d 1361, 1365 (7th Cir. 1995), and then only in accordance with the terms and conditions of the collective bargaining agreement. *DeVito v. Hempstead China Shop, Inc.*, 38 F.3d 651, 653 (2d Cir. 1994) (citing Section 515 of ERISA, 29 U.S.C. § 1145). There is no dispute that Chicago Steel is party to a collective bargaining agreement with Local No. 1 and, although the parties dispute whether Chicago Steel is the alter-ego of or single employer with All Erectors, the court will assume as much for purposes of this motion. The Funds, as third-party beneficiaries to the collective bargaining agreement, are entitled to enforce the collective bargaining agreement and attendant trust agreements against Chicago Steel and All Erectors.[3] *See id.*

---

[3]Under Section 502(a)(3) of ERISA, a participant, beneficiary or fiduciary may bring an action to enjoin any act or practice which violates ERISA provisions or obtain equitable relief to redress such violations or enforce any provision of ERISA or the terms of the plan. 29 U.S.C. § 1132(a)(3). Under Section 301 of LMRA, suits may be brought by a labor organization for violation of contracts between an employer and the labor organization representing the employees. 29 U.S.C. § 185(a).

Chicago Steel and All Erectors argue that summary judgment should be granted in their favor on the issue of whether they are liable for contributions for payments to "Mooncotch" and "cash" because the Funds, which have the burden to prove that Chicago Steel and All Erectors are obligated to make contributions under the collective bargaining agreement, have failed to show that any such payments were for covered work. They assert that all that the Funds' evidence shows is that Mooncotch, who is not an employee under the collective bargaining agreement with Local No. 1,[4] reported nearly all of these payments as income on his personal income tax returns and that his personal check register did not identify any payments to iron worker employees covered under the collective bargaining agreement with Local No. 1.

The Funds do not dispute that Mooncotch is not an employee covered under the collective bargaining agreement with Local No. 1; rather, they argue that there is a genuine issue of material fact that the checks to him and "cash," purportedly as his income, were used to pay iron workers for bargaining unit work covered under the collective bargaining agreement, citing "questionable transactions in All Erectors' business records," as well as various other pieces of evidence. Specifically, the Funds point out that although Mooncotch claims he paid income taxes on the checks to himself or cash, of which there are approximately 136 checks (Mot. Summ. J., Ex. C), they and their auditors have uncovered twelve checks for which he did not pay taxes. (Funds' LR 56.1(b)(B)(3) ¶¶ 98-99, 117.)[5] For several checks, there were notations in All Erectors' check register or Invoice Distribution such as "p/r w/e" suggesting that they were for "payroll"

---

[4]Mooncotch is a member of the Operating Engineers Union Local 150 ("Local 150"). Chicago Steel contributes to fringe benefit funds created by Local 150's agreement on his behalf.

[5]Checks ## 6816, 6683, 6737, 6974, 7004, 7005, 7079, 7224, 7066, 6597, 6770, 6773.

"week-ending" the date notated therein (*id.* ¶¶ 102, 108, 110, 113),[6] or "void" with "cash" written in. (*Id.* ¶ 120.)[7] Some of these same checks as well as others were coded in All Erectors' general ledger as "Chicago Steel labor: 4044," "Chicago Steel labor: 4049," "Chicago Steel labor: 4040," "Chicago Steel payroll: 4040," "Materials: 4043," or "Subcontracting - Labor: 4048." (*Id.* ¶¶ 103-04, 110, 113-14, 120, 126, 130, 132, 135.)[8] These notations are consistent with notations in All Erectors' records regarding payroll checks to Chicago Steel employees. (*Id.* ¶ 139.) The Funds note other examples of "apparently deceiving record keeping," such as a $250.00 check listed in All Erectors' check register as "cash," but the actual cancelled check is payable to La Grange Crane for $20,000.00 (*id.* ¶ 128),[9] and a check listed in All Erectors' check register as "Cellular One" but the actual check is to "cash" negotiated by Mooncotch and posted to "subcontractor labor w/e 1/26/97." (*Id.* ¶¶ 114-16.)[10] Chicago Steel and All Erectors reply that there were some bookkeeping and clerical errors, but assert that Mooncotch is amending his tax returns to include those checks not previously included, and the checks with notations such as "p/r w/e" were income to Mooncotch, but those indicating notations such as "Chicago Steel labor: 4044" *etc.* have been reclassified to the correct account as income to Mooncotch, account 4509. (*See generally* Chicago Steel and All Erectors' Resp. to Funds' 56.1(b)(3)(B)).

---

[6]Notations in All Erectors check register: ##6377, 6378 as "p/r w/e 9/1/96"; #6463 as "w/e 11/10/cash"; #6470 as "w/e 11/24/cash"; ##6475, 6477 "w/e 12/8/96/cash"; #6503 "w/e 12/15/96/cash"; #6505 "w/e 12/22/96/cash"; #6513 as "w/e 11/10/cash"; #6515 "w/e 12/29/96/cash." Notations in the Invoice Distribution: checks #6519 as "W/E010797"; #6511 as "WEI-19."

[7]Checks ##6533, 6552, 6556.

[8]Checks ##6385, 6424, 6427, 6475, 6477, 6503, 6505, 6511, 6515, 6519, 6526, 6533, 6556, 6594, 6595, 6600, 6602, 6661, 6664, 6667, 6702, 6723, 6730.

[9]Check #6607.

[10]Check #6526.

8

The Funds proposed expert, Dennis Czurylo (who has been an IRS agent and in private practice and has been doing financial investigations for over 34 years), would apparently testify that in his opinion, the auditors "reasonably assumed" that payments to "cash" and "Mooncotch" by All Erectors for the audit period at issue were for payments to iron workers for bargaining unit work. Czurylo bases his opinion on the fact that although Chicago Steel is the signatory to the collective bargaining agreement, it is merely a "pass-through" payroll entity and All Erectors, the operating entity, contracts with individuals and entities to erect steel; the checks to "cash" and "Mooncotch" had no backup documentation; the notations on many of them are consistent with notations on checks from a prior audit period which were agreed to as payments for bargaining unit work; and his experience is that reporting of such monies for federal tax purposes is likely to be a tax neutral transaction, i.e. "[p]aying workers 'off the books' . . . results in considerable savings to an employer." (*See* Ex. List of Chicago Steel and All Erectors, Ex. 1.)

The Funds argue that because they have shown that Chicago Steel's and All Erectors' business records "are so riddled with inconsistencies" and of questionable accuracy, they have brought forward evidence of the employer's breach of its record-keeping duty under ERISA, 29 U.S.C. § 1059(a)(1), which in turn shifts the burden to the employer to prove that the hours reflected in the Funds' audit report is not covered under the collective bargaining agreement. (Resp. at 2-3.) Section 1059, provides:

> (a)(1) Except as provided by paragraph (2) every employer shall, in accordance with regulations prescribed by the Secretary, maintain records with respect to each of his employees sufficient to determine the benefits due or which may become due to such employees. The plan administrator shall make a report, in such manner and at such time as may be provided in regulations prescribed by the Secretary, to each employee who is a participant under the plan and who–

> (A) requests such report, in such manner and at such time as may be provided in such regulations,
> (B) terminates his service with the employer, or
> (C) has a 1-year break in service (as defined in section 1053(b)(3)(A) of this title).
>
> The employer shall furnish to the plan administrator the information necessary for the administrator to make the reports required by the preceding sentence. . . .
>
> (b) If any person who is required, under subsection (a) of this section, to furnish information or maintain records for any plan year fails to comply with such requirement, he shall pay to the Secretary a civil penalty of $10 for each employee with respect to whom such failure occurs, unless it is shown that such failure is due to reasonable cause.

29 U.S.C. § 1059. They also argue that the conclusion that Chicago Steel and All Erectors paid iron workers in cash is supported by Mooncotch's questionable behavior in a prior audit in which he told Funds' auditors he did not own All Erectors and destroyed a payroll hours report (which indicated hours worked by iron workers but paid outside the payroll system and not reported to the Funds) in front of auditors. (Funds' LR 56.1(b)(B)(3) ¶¶ 10, 28, 36-37.) Also, in October, 1998, a foreman for Chicago Steel, Carl Johnson, solicited Danny Lopez, an iron worker and member of Local 395, to work for cash on weekends on a Chicago Steel project in Indiana. Lopez would testify that Johnson told him: "that is how [Mooncotch] does it in Chicago." (*Id.* ¶¶ 140-56.)

The Funds' argument hinges on an incorrect interpretation of the burden-shifting scheme under section 1059. Section 1059 requires an employer to maintain time records or similar records of hours worked by employees in order to permit ERISA plans to calculate benefits due and to fulfill their reporting duties. *See Cent. States Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 573 (1985); *Steve Gilbert Trucking*, 71 F.3d at 1367 (citing 29 U.S.C. § 1059(a), *Brick*

*Masons Pension Trust* v. *Indus. Fence & Supply*, 839 F.2d 1333, 1338 (9th Cir. 1988), and *Combs v. King*, 764 F.2d 818, 822 (11th Cir. 1985)). Where trust funds attempt to collect delinquent employer contributions, courts have imposed a presumption in favor of the funds regarding proof of the extent of damages. If the funds establish that the employer has failed to make contributions for employees covered under the collective bargaining agreement and they also establish a breach of section 1059 (failure to keep accurate employee records), then the Funds need only "produce[] sufficient evidence to show the amount and extent of that work as a matter of just and a reasonable inference," which, in turn, shifts to the employer the burden to produce evidence of the precise amount of work performed or evidence to negate the reasonableness of the inferences to be drawn from the Funds' evidence. *Combs*, 764 F.2d at 826-27; *see also Brick Masons*, 839 F.2d at 1338-39. The rationale for applying this burden-shifting analysis was set out by the Supreme Court in *Anderson v. Mt. Clemens Pottery Co.*, interpreting a similar record-keeping provision under the Fair Labor Standards Act (FLSA), wherein it concluded that an employee should not be penalized for his employer's failure to keep accurate records of his work such that the employee is unable to prove the extent of damages, and the employer should not be allowed to "keep the benefits of an employee's labors without paying due compensation as contemplated" by the statute. 328 U.S. 680, 687 (1946). *See also Combs*, 764 F.2d at 827.

The point the Funds' miss, however, which is emphasized in *Anderson*, and in the ERISA cases relied on by both parties, is that the Funds must prove the fact of damage. *See Anderson*, 328 U.S. at 688 (The "rule applies only to situations where the fact of damage is itself

11

uncertain."); *Combs*, 764 F.2d at 826-27 (same); *Brick Masons*, 839 F.2d at 1338 (same);[11] *see also Michigan Laborers' Health Care Fund v. Grimaldi Concrete, Inc.*, 30 F.3d 692, 697 (6th Cir. 1994) ("We agree . . . that . . . an employer is liable for contributions on all hours worked during a period in which it has been demonstrated that some covered work was performed."); *Steve Gilbert Trucking*, 71 F.3d at 1367 ("*Brick Masons* and *Combs* held that if a trust fund has proved that the employer is liable for delinquent contributions and that the employer has failed to keep adequate records, the burden shifts to the employer to come forward with evidence that the fund's calculations of damages are not accurate."). In these ERISA cases, there was either undisputed evidence that the employees for which the funds sought to recover contributions had performed some covered work, *Brick Masons*, 839 F.2d at 1338-39 (reversing denial of damages to trust funds, stating that "[h]ere, as in *Combs* and *Anderson*, the *fact* of damage is certain" in that it was "undisputed that the Trust Funds received no contributions for work performed by . . . 35 Harris masons even though they did some covered work during the relevant time period" and that the employer failed to keep adequate records regarding the extent of the work performed); *Michigan Laborers'*, 30 F.3d at 697 ("In *Anderson*, the Supreme Court also emphasized that the fact of damage was certain, as in the present case, and that an employer should not be allowed to benefit from the violation of a statutory duty."), or in the one case with a procedural posture akin to the instant case, *Combs*, it appears the issue was not whether unnamed employees were covered but rather the precise calculation of their covered work. *See Combs*, 764 F.2d at 820, 827 (reversing summary judgment for employer where trustees produced evidence in the form of

---

[11]The Ninth Circuit recently reiterated the *Brick Masons'* standard in *Motion Picture Indus. Pension & Health Plans v. N.T. Audio Visual Supply, Inc.*, 259 F.3d 1063, 1066-67 (9th Cir. 2001).

12

affidavits by two of defendant's employees regarding amount of time worked each day and an affidavit of a certified public accountant who concluded, *inter alia*, that during the audit period "53,387.75 hours had been worked by the defendant company's classified employees [but t]he company [sic] had reported and remitted contributions for 35,115.12 hours, resulting in an unreporting of 18,272.63 hours.").[12]

Here, by contrast, the Funds have not identified any employee who did work covered under the collective bargaining agreement with Local No. 1 who was paid in cash for the audit period. For checks with suspicious notations,[13] there is no evidence that the Funds attempted to link the dates of these checks to particular Chicago Steel employees or even particular projects covered under the collective bargaining agreement (nor is there any basis for a trier of fact to assume that all Chicago Steel work within the audit period was only on Local No. 1 projects). Indeed, the Funds have not even referred to the sections of the collective bargaining agreement that address covered work.

Lopez's testimony that Johnson solicited him to work for cash on weekends and told him that "that is how [Mooncotch] does it in Chicago" also is speculative. Not only is Lopez not a Local No. 1 worker and the project an Indiana project not covered by Local No. 1's collective bargaining agreement, but the Funds have not linked Johnson's statement regarding how Mooncotch "does it in Chicago" to any particular time period, let alone the time period of the

---

[12] For this reason, the Funds' selective quotation from *Brick Masons Pension Trust*, 839 F.2d at 1340 and *Woldman v. Medley's Moving & Storage, Inc.*, No. 86 C 1267, 1998 WL 84737, *4 n.5 (N.D. Ill. Aug. 8, 1998) (Holderman, J.), *see* Resp. at 3, to argue that the burden-shifting applies to liability as well as damages, not only misapplies these cases, but is against the weight of the case law.

[13] Notably, it appears that the Funds have brought forth evidence of "suspicious" notations for only a portion of all the checks made out to "cash" or "Mooncotch" for which they claim contributions.

audit. The fact that Mooncotch told auditors in a prior audit he did not own All Erectors and destroyed records reflects poorly on his credibility and indicates that he may pay workers in cash, but it amounts only to speculation regarding the liability the Funds must prove in the instant case. Finally, the Funds' proposed expert's testimony does not cure the speculative nature of the Funds' evidence. At most, it, like the Funds' audit report, would establish only a likelihood that some checks to "cash" and "Mooncotch" were used to pay iron workers and even a more speculative likelihood that their work was covered under the Local No. 1 agreement. The Funds "must present more than mere speculation or conjecture to defeat a summary judgment motion." *Liu v. T & H Machine, Inc.*, 191 F.3d 790, 796 (7th Cir. 1999) ("[A] genuine issue of material fact does not exist unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party."); *see also Liberty Lobby, Inc.*, 477 U.S. at 249-50 ("If the evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted.").

Indeed, one of the cases cited by the Funds, *Carpenters Fringe Benefit Funds of Illinois v. McKenzie Eng'g*, 217 F.3d 578 (8th Cir. 2000), supports the outcome reached in the instant case. The issue in *Carpenters*, as here, was "whether certain employees [we]re covered by the [collective bargaining agreement], not whether some of a covered employee's hours should be excluded from coverage." *Id.* at 583. There, the funds' claim for unpaid contributions was based entirely on an audit report in which the auditors had assumed that every one of defendant's employees not reported to the funds performed covered work "[s]ince [the auditors] could not verify the work performed by any of these individuals." *Id.* The court reversed judgment for the funds reasoning that such assumption was "contractually unwarranted" and

14

further noted that the evidence at trial confirmed the fallacies underlying the funds' calculation of unpaid contributions where, *inter alia*, there was nothing in the record explaining why defendant "owes contributions to the Funds for these hours, as opposed to another union's pension fund, or to no fund at all." *Id.* at 583-84. The court also hinted that the burden-shifting did not apply, reasoning that the issue was not the accuracy of records (although the auditors could not verify work performed) and the employer's undermining of the funds' auditors' assumptions, "left the Funds with an unremedied failure of proof." *Id.* at 585.[14]

The court, therefore, grants summary judgment to Chicago Steel and All Erectors on the issue of liability. Since proof of liability is an element of the Funds' claims, the court grants summary judgment to Chicago Steel and All Erectors on the Funds' claims. The court dismisses, as moot Chicago Steel's request for declaratory relief.

## CONCLUSION

For the reasons explained above, the court grants the motion for summary judgment [#112] on the Funds' claims and dismisses, as moot, Chicago Steel's request for declaratory relief. The court also denies, as moot, the motions to strike portions of the Funds' statement of additional facts [#108] and to exclude the Funds' expert. The case is terminated.

ENTER: _____
United States District Judge

Date: July 19, 2002

---

[14]The *Brick Masons* court also rejected two theories of the trust funds based on speculation. 839 F.2d at 1339 n. 4 (The court held that there was no basis in the record to support an inference that non-union employees performed covered work while in Harris' employ merely because they had been reported as having done union work by other employers and rejected an argument that the trust funds were entitled to recover for all hours worked by non-union employees on the basis that two employees testified that approximately 20% of covered projects were performed by non-union employees, reasoning that even if the testimony were credited by the trier of fact, it was "still too speculative to support a finding that a certain number of identified Harris masons worked on [covered] jobs.").

15